# United States Court of Appeals for the Federal Circuit

---

**INVENTOR HOLDINGS, LLC,**
*Plaintiff-Appellant*

**v.**

**BED BATH & BEYOND, INC.,**
*Defendant-Appellee*

---

2016-2442

---

Appeal from the United States District Court for the District of Delaware in No. 1:14-cv-00448-GMS, Judge Gregory M. Sleet.

---

Decided: December 8, 2017

---

RICHARD CHARLES WEINBLATT, Stamoulis & Weinblatt LLC, Wilmington, DE, argued for plaintiff-appellant.

RICARDO BONILLA, Fish & Richardson P.C., Dallas, TX, argued for defendant-appellee. Also represented by DAVID BRANDON CONRAD, NEIL J. MCNABNAY; JOHN A. DRAGSETH, Minneapolis, MN.

---

Before WALLACH, CHEN, and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge.*

Inventor Holdings, LLC (IH) sued Bed Bath & Beyond, Inc. (BBB) for infringement of U.S. Patent No. 6,381,582 (the '582 patent) in April 2014. The Supreme Court issued its decision in *Alice Corp. v. CLS Bank International* in June 2014. 134 S. Ct. 2347 (2014). BBB thereafter moved for judgment on the pleadings, contending that *Alice* rendered the asserted claims of the '582 patent invalid under 35 U.S.C. § 101. The district court granted BBB's § 101 motion. *See Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, 123 F. Supp. 3d 557, 563 (D. Del. 2015). We affirmed the district court's § 101 decision without opinion under Federal Circuit Rule 36. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 643 F. App'x 1014, 1015 (Fed. Cir. 2016).

BBB moved for an award of attorney fees pursuant to 35 U.S.C. § 285, arguing that, once *Alice* issued, IH should have reevaluated its case and dismissed the action. The district court granted BBB's fees motion, holding that, "following the *Alice* decision, IH's claims were objectively without merit." *Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, No. 14-CV-448, 2016 WL 3090633, at *3 (D. Del. May 31, 2016). The district court awarded BBB its attorney fees beginning from the date of the *Alice* decision, including fees incurred during the § 101 appeal. *See id.* at *4. IH appeals the district court's fees decision. We affirm.

BACKGROUND

I. The '582 Patent

The claimed invention relates to a method of purchasing goods at a local point-of-sale system from a remote seller. Claims 8, 25, and 41, excerpted below, are representative of the claims of the '582 patent:

> 8. A method of processing a payment for a purchase of goods, comprising the steps of:

receiving at a point-of-sale system a code relating to a purchase of goods;

determining if said code relates to a local order or to a remote order from a remote seller;

if said code relates to a remote order, then

determining a price for said remote order,

receiving a payment for said remote order, and

transmitting to said remote seller data indicating that said payment has been received for said remote order.

'582 patent col. 14 ll. 7–18.

25. A method for a remote seller to process a payment for the sale of goods, comprising the steps of:

receiving a remote order for a purchase of goods from a customer;

generating a code and a purchase price for said remote order;

transmitting said code and said purchase price to the customer;

providing order data for use by a point-of-sale system of a local seller in receiving a payment for said remote order;

receiving payment data confirming said payment has been received at said point-of-sale system of said local seller;

initiating, responsive to said payment data, a shipment of said goods; and

receiving a payment for said remote order from said local seller.

*Id.* col. 15 ll. 7–25.

> 41. A method [for] submitting a payment for a purchase of goods, comprising the steps of:
>
> transmitting an order for goods to a remote merchant;
>
> receiving a code and a purchase price for said order from said remote merchant;
>
> providing at least one of said code and said purchase price for use by a point-of-sale system of a local seller in processing a payment for said order;
>
> submitting said payment to said local seller at said point-of-sale system; and
>
> receiving said goods from said remote merchant.

*Id.* col. 16 ll. 5–15.

Figure 1 from the patent depicts the specification's only embodiment of a system used to perform the methods recited in claims 8, 25, and 41:



FIG. 1

The patent explains, using the system in Figure 1, that a buyer may place an order for goods with a remote

seller, after which the remote seller generates an "order code." *Id.* col. 5 ll. 54–56, col. 6 ll. 37–40. The buyer may then enter the order code at a point-of-sale (POS) terminal in a local retail store and pay for the order in person. *See id.* col. 11 ll. 10–57. According to the patent, paying at a local POS terminal distinguishes prior art systems because prior art "catalog purchases" were typically "conducted by telephone and paid for by credit card," and "[m]any consumers . . . do not feel secure in providing their credit card number to a 'stranger' over a telephone." *Id.* col. 1 ll. 45–48. Thus, the '582 patent purports to disclose an improved way to "pay for remote purchases" using "payment options available at a local store." *Id.* col. 13 ll. 34–39. In other words, the invention covers purchasing goods from a remote seller by placing an order, receiving an order code, entering the order code at a POS terminal, and paying for the order in person.

The specification explains that the components in Figure 1 are implemented using conventional computer technology. *Id.* col. 5 ll. 36–38 ("[D]ata link 24 comprises an Internet connection, for example a conventional worldwide-web browser, established through a telephone line."); *id.* col. 5 ll. 39–41 ("[P]oint-of-sale (POS) terminals 26A, 26B, 26*n* are connected to local POS system 14, for example through a conventional computer data network."); *id.* col. 5 ll. 46–48 ("Local POS system 14 with POS terminals 26A–*n* comprise[] a conventional, commercially available POS processing system."); *id.* col. 5 ll. 48–49 ("Remote processor system 16 comprises a conventional computer system . . . ."); *id.* col. 5 ll. 51–52 ("[B]uyer system 22 comprises a conventional home computer . . . ."); *id.* col. 5 ll. 64–65 ("[L]ocal POS system 14 comprises a conventional POS processing system . . . ."); *id.* col. 5 ll. 32–34 ("These systems are suitably interconnected by data links 18, 20, comprising for example telephone connections or electronic network connections."). The only physical

components recited in the representative claims are a POS system and POS terminals.

## II. Procedural History

IH's predecessor-in-interest sued 7-Eleven, Inc. (7-Eleven), Amazon, Inc. (Amazon), PayNearMe, Inc. (PayNearMe), and Wal-Mart Stores, Inc. (Walmart) (collectively referred to hereinafter as "other defendants") in the United States District Court for the District of Delaware in January 2013 for infringement of the '582 patent.[1]  7-Eleven, Amazon, and PayNearMe jointly filed a motion to dismiss IH's complaints under Federal Rule of Civil Procedure 12(b)(6), arguing that IH's patent was directed to patent-ineligible subject matter under § 101. Walmart filed a separate Rule 12(b)(6) motion, also arguing invalidity under § 101.  The district court denied both motions without opinion on December 6, 2013.

In April 2014, IH sued BBB for infringement of the '582 patent.  BBB filed an answer on May 30, 2014.  The Supreme Court issued its decision in *Alice* on June 19, 2014.  BBB did not immediately file its § 101 motion for judgment on the pleadings after the Supreme Court issued its decision in *Alice*, because, according to BBB, "[i]t interpreted the district court's denial of the prior defendants' motions as an indication that the court intended to give [IH] the discovery and claim construction opportunities it said it needed in its briefing" before deciding the § 101 issue.  Appellee's Br. 5.

### A. BBB's § 101 Motion

After IH submitted its proposed claim constructions to the district court, BBB filed its § 101 motion pursuant to

---

[1]    IH replaced its predecessor-in-interest as plaintiff in these suits pursuant to stipulations in January and February 2014.

Federal Rule of Civil Procedure 12(c) on February 6, 2015. BBB argued that the '582 patent's claims are directed to the abstract idea of "paying for a remote purchase at a local retailer" and that the claims "do not include any meaningful limitations that would ensure that they amount to 'significantly more' than just the ineligible abstract idea." J.A. 169 (quoting *Alice*, 134 S. Ct. at 2360).

IH opposed BBB's motion by arguing that the claims are directed to "a unique solution to protect a person from having his or her credit card information stolen when making a remote purchase," which IH argued is not an abstract idea. J.A. 205. IH also argued that the claims recite an "inventive concept" similar to the one found in the claims discussed in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256–57 (Fed. Cir. 2014). J.A. 208. Specifically, IH argued that "the use and processing of codes and communication between local and remote systems" is a "solution" that is "necessarily rooted in computer technology." *Id.* (quoting *DDR Holdings*, 773 F.3d at 1257). According to IH, this solution requires "complex programming," although IH did not cite any complex programming in the patent or the record. J.A. 212. IH also argued that the claims satisfy the "machine-or-transformation test." J.A. 208 (citing *Bilski v. Kappos*, 561 U.S. 593, 604 (2010)).

The district court granted BBB's § 101 motion on August 21, 2015. *Inventor Holdings*, 123 F. Supp. 3d at 558. The district court found that the asserted claims are directed to the abstract idea of "local processing of payments for remotely purchased goods." *Id.* at 561. According to the district court, "[n]one of the '582 patent's claims are restricted to any specific, inventive ways of storing codes in databases or electronically applying them" under the second prong of *Alice*'s test for patent eligibility. *Id.*

IH appealed the § 101 decision. We affirmed via Rule 36 on April 7, 2016. *See Inventor Holdings*, 643 F. App'x at 1015.

## B. BBB's Fees Motion

BBB moved for an award of attorney fees under § 285 on September 4, 2015. The district court did not rule on BBB's fees motion until after the completion of IH's § 101 appeal. BBB argued that this case is exceptional under the standard articulated in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), because IH should have reevaluated its case after *Alice* and dismissed the action, but did not. IH responded that the case was not exceptional because § 101 was an "evolving area of the law," which made patent-eligibility analysis difficult and uncertain after *Alice*. J.A. 1083.

The district court granted BBB's fees motion, holding that the case was "exceptional" under § 285.[2] *Inventor Holdings*, 2016 WL 3090633, at *1–2. The district court held that, even though it denied the other defendants' § 101 motions before *Alice*, "following the *Alice* decision, IH's claims were objectively without merit." *Id.* at *3. The district court awarded BBB its post-*Alice* attorney fees, including fees incurred during the appeal of the district court's § 101 decision, in the amount of $931,903.45. IH timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

We review "all aspects of a district court's § 285 determination" for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1749 (2014). "A district court would necessarily abuse its

---

[2]    There is no dispute that BBB was the "prevailing party" under § 285.

discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* at 1748 n.2 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

## DISCUSSION

### I. Exceptional Case

Section 285 states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. An exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

The district court determined that this case was exceptional based solely on the weakness of IH's post-*Alice* patent-eligibility arguments and the need to deter future "wasteful litigation" on similarly weak arguments. *Inventor Holdings*, 2016 WL 3090633, at *3 ("[W]hatever merit IH's claims had at the outset of litigation, by the time of the *Alice* decision, the business method claims in the '582 Patent were objectively ineligible under § 101."); *Id.* ("These facts alone . . . support a finding that the case 'stands out from others' and is exceptional under § 285. The court is convinced that an award of attorneys' fees in this case is necessary to deter wasteful litigation in the future." (citation and footnote omitted)). We conclude that the district court acted within the scope of its discretion in finding this case to be exceptional based on the weakness of IH's § 101 arguments and the need to deter similarly weak arguments in the future. *See Octane Fitness*, 134 S. Ct. at 1757 ("[A] case presenting . . . exceptionally meritless claims may sufficiently set

itself apart from mine-run cases to warrant a fee award."); *id.* at 1756 n.6 (noting "the need in particular circumstances to advance considerations of compensation and deterrence" as part of a "'nonexclusive' list of 'factors'" district courts may consider when determining whether to award fees under § 285 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994))).

Under *Alice*, the claims of the '582 patent are manifestly directed to an abstract idea, which the district court accurately described as "local processing of payments for remotely purchased goods." *Inventor Holdings*, 123 F. Supp. 3d at 561 (citing '582 patent col. 1 ll. 6–10). The idea that a customer may pay for items ordered from a remote seller at a third-party's local establishment is the type of fundamental business practice that, when implemented using generic computer technology, is not patent-eligible under *Alice*. 134 S. Ct. at 2355 (quoting *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852) ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.")). As we explained in *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012), the abstract idea exception to patent eligibility disallows the patenting of "basic concept[s]," such as "processing information through a clearinghouse," because no entity is entitled to "wholly preempt" such concepts. *Id.*; *see also Alice*, 134 S. Ct. at 2354.

Under *Alice*'s second step, the only components disclosed in the specification for implementing the asserted method claims are unambiguously described as "conventional." *See supra* Background § I. These components do not supply an inventive concept. *See Alice*, 134 S. Ct. at 2359 (holding that the implementation of an abstract idea using computer functions that are "'well-understood, routine, conventional activit[ies]' previously known to the industry" did not supply an inventive concept (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566

U.S. 66, 79 (2012))).  Moreover, here, as in *Alice*, considering the method steps of the representative claims as an "ordered combination" reveals that they "amount to 'nothing significantly more' than an instruction to apply [an] abstract idea" using generic computer technology. *See Alice*, 134 S. Ct. at 2359–60 (quoting *Mayo*, 566 U.S. at 79).[3]

IH argues that it was reasonable for it to believe that the '582 patent was patent-eligible post-*Alice* based on the district court's denials of the other defendants' § 101 motions before *Alice* issued.  Appellant's Br. 15.  IH contends that a "necessary prerequisite" to the district court's ruling was that "*Alice* changed the law on § 101 and did so so clearly and definitively as to render the '582 patent clearly invalid." *Id.* at 15–16.  IH then argues that *Alice* did not fundamentally change § 101 law, noting that the Supreme Court applied the same test in *Alice* that it previously set out in *Mayo*.  *Id.* at 16–18 (citing 566 U.S. at 77–80).  IH further argues that § 101 was, and is, an evolving area of law and that the § 101 inquiry in this case was therefore difficult.  *Id.* at 18.

---

[3]    IH argued before the district court, in opposition to BBB's § 101 motion, that the representative claims' electronic handling of "codes" supplied an inventive concept.  *See, e.g.*, J.A. 203 n.5 ("A human, unassisted by the invention of the '582 patent, cannot store codes in a database and electronically apply those codes to remote or local orders entered in a POS system."); *id.* at 208 ("The solution – the use and processing of codes and communication between local and remote systems – is necessarily rooted in computer technology.").  IH did not discuss these arguments in its briefing in opposition to BBB's fees motion before the district court and does not raise them on appeal.  *See generally* J.A. 1080–83.

We find IH's arguments to be meritless.  First, as the district court correctly noted in its opinion, IH's claims were "dubious even before the *Alice* decision" in light of, for example, *Dealertrack* and *Bilski*.  *Inventor Holdings*, 2016 WL 3090633, at \*2 (observing that "[t]here is a strong argument that using a third-party intermediary to create a remote pay system is an abstract idea in light of *Bilski*[, 561 U.S. at 611–12]").  Although the district court did not give reasons for denying the other defendants' pre-*Alice* § 101 motions, IH has cited no evidence that the district court ever endorsed the patent-eligibility of the asserted claims.  *Cf. Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995) ("[T]he denial of the motion to dismiss was not a decision on the merits of that motion, but was a means of postponing decision on the merits.").

Second, we find that *Alice* was a significant change in the law as applied to the facts of this particular case.  Prior to *Alice*, the state of the law for computer-implemented business transaction inventions was less than clear, given this court's divided en banc opinion in *CLS Bank International v. Alice Corp.*, 717 F.3d 1269, 1273 (Fed. Cir. 2013).  As we later explained, post-*Alice*, in *Mortgage Grader, Inc. v. First Choice Loan Services Inc.*, "a § 101 defense previously lacking in merit may be meritorious after *Alice*.  This scenario is most likely to occur with respect to patent claims that involve implementations of economic arrangements using generic computer technology, as the claims do here."  811 F.3d 1314, 1322 (Fed. Cir. 2016).  Like the claims at issue in *Mortgage Grader*, the '582 patent's claims are directed to an "economic arrangement" implemented using "generic computer technology."  These issues were significant, if not determinative, of the Court's holding in *Alice*.

Finally, while we agree with IH as a general matter that it was and is sometimes difficult to analyze patent eligibility under the framework prescribed by the Su-

preme Court in *Mayo*, there is no uncertainty or difficulty in applying the principles set out in *Alice* to reach the conclusion that the '582 patent's claims are ineligible. The '582 patent's alleged invention does not require us to engage in a difficult line-drawing exercise for a claimed invention resting on, or anywhere near, the margins of patent-eligibility; rather, the patent claims here are directed to a fundamental economic practice, which *Alice* made clear is, without more, outside the patent system. *See, e.g.*, '582 patent col. 2 ll. 35–46 (describing prior art "[w]arehouse type retailers" that permitted customers to order both "in-stock goods" and goods in "store catalogs" and pay for either type of goods at a store). In addition, here, as in *Alice*, the patentee is attempting to broadly monopolize an abstract idea as implemented using generic computer technology. IH's asserted claims were plainly invalid in view of *Alice* and its reasoning.

It was IH's responsibility to reassess its case in view of new controlling law. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims . . . ."). The district court did not abuse its discretion in awarding fees based on IH's failure to reassess the weakness of its case under *Alice* and then confining the award to fees accrued after the *Alice* decision issued.

## II. Award of Appellate Fees Under § 285

IH argues that the district court abused its discretion in awarding appellate attorney fees. Appellant's Br. 24–27. We have previously held that § 285 "does not bar the trial court from awarding fees for the entire case, including any subsequent appeals." *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 517 (Fed. Cir. 2014). The district court "live[d] with the case over a prolonged period of time," *Highmark*, 134 S. Ct. at 1748, and was in the best position to award fees as an initial matter for the

entire case, including the § 101 appeal. There were obvious issues with the '582 patent's claims that IH should have recognized post-*Alice*, and these issues persisted throughout the § 101 appeal. The district court was in a position to readily assess these issues as a collective whole and did not abuse its discretion in awarding BBB its appellate attorney fees.

We have considered IH's other arguments and find them to be unpersuasive.[4]

CONCLUSION

Because the district court did not abuse its discretion in awarding attorney fees under § 285, the district court's decision is

**AFFIRMED**

---

[4]    IH makes several arguments about general, unsettled issues in § 101 jurisprudence, relating to the appropriate burden of proof, whether evidence is necessary to invalidate a patent under § 101, what overlap there is between § 101 and 35 U.S.C. § 103, etc. But it makes no specific arguments regarding any of these issues to tie them to this particular case. We decline to address broad, theoretical arguments about § 101 law without any tethering of such arguments to the facts of this case.