WALLACH, Circuit Judge, dissenting.
I disagree with the majority's decision to reverse the U.S. District Court for the Southern District of New York ("District Court")'s award of attorney fees pursuant to 28 U.S.C. § 1927 (2012).[1] The Second Circuit reviews a district court's award of § 1927 sanctions "for [an] abuse of discretion." Enmon v. Prospect Capital Corp ., 675 F.3d 138, 143 (2d Cir. 2012).[2] A district *1335 court abuses its discretion only when it bases its sanctions on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id . (citation omitted). The Supreme Court has cautioned that finding that a district court has abused its discretion is a high bar that an appellant must clear. See Cooter & Gell v. Hartmarx Corp ., 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). By reversing the District Court's evidentiary findings on the clear evidence supporting counsel's lack of colorable claims and bad faith in bringing these claims, as is required in the Second Circuit, the majority contravenes this precedent and improperly substitutes its own findings for that of the District Court. On the record before us, I cannot say that any of the District Court's findings were based on an erroneous assessment of the law or evidence. Therefore, because I would affirm the District Court's award of § 1927 fees, I respectfully dissent.
DISCUSSION
Appellant AlphaCap Ventures, LLC ("AlphaCap") and Appellee Gust, Inc. ("Gust") litigated this matter across two jurisdictions over the course of a year and a half. AlphaCap sued Gust for patent infringement, along with bringing separate infringement actions against nine other entities, in the Eastern District of Texas ("Eastern District"). J.A. 55. Following a transfer to the District Court, AlphaCap's complaint was consolidated with a declaratory judgment action filed by Gust. J.A. 61; see also J.A. 458, 555. After AlphaCap filed its covenant not to sue, the District Court granted AlphaCap's motions to dismiss, see Gust, Inc. v. AlphaCap Ventures, LLC (Gust I ), No. 1:15-cv-6192 (DLC), 2016 WL 4098544, at *6 (S.D.N.Y. July 28, 2016), and the District Court determined that "Gust bore [and met] the burden of proving that the case was exceptional and that § 1927 authorized the award of fees jointly against AlphaCap's counsel [Gutride Safier LLP ('Gutride') ]," Gust, Inc. v. AlphaCap Ventures, LLC (Gust II ), 226 F.Supp.3d 232, 254 (S.D.N.Y. 2016). In reaching this conclusion, the District Court analyzed and relied upon Gust's evidence outlining "the history of this litigation," "why [ U.S. Patent Nos. 7,848,976, 7,908,208, and 8,433,630 (collectively, 'the Patents-in-Suit') ] were patent ineligible under the Alice [Corp. v. CLS Bank Int'l , 573 U.S. 208, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) ] standard," and "why AlphaCap's litigation strategy was unreasonable at every stage of the litigation." See Gust II, 226 F.Supp.3d at 252-54. I agree and would affirm the District Court's findings in full.
In the Second Circuit, an award under § 1927 requires: (1) that claims were "entirely without color," and (2) "were brought in bad faith-that is, motivated by improper purposes such as harassment or delay." Advanced Magnetic Closures, Inc. v. Rome Fastener Corp. , 607 F.3d 817, 833 (Fed. Cir. 2010) (citing Eisemann v. Greene , 204 F.3d 393, 396 (2d Cir. 2000) (per curiam) ). As stated above, the Second Circuit reviews a district court's award of § 1927 sanctions "for an abuse of discretion." Enmon , 675 F.3d at 143.
I. The District Court Did Not Abuse Its Discretion in Finding Lack of A Colorable Claim
The District Court aptly found AlphaCap's lawsuit against Gust to be "frivolous," "objectively baseless," and its claims without color such "that no litigant could have a reasonable expectation of success on the merits." Gust II, 226 F.Supp.3d at 241. The District Court performed a § 101 analysis under Alice and found the Patents-in-Suit "are directed to the patent-ineligible abstract idea of crowdfunding, and do not contain an inventive concept *1336 sufficient to transform the abstract idea of crowdfunding into a patent-eligible application." Id. at 244-45.
The Supreme Court's decision in Alice provides the framework with which we have consistently assessed patent eligibility under § 101 since its rendering. See 134 S.Ct. at 2354-55. Under this framework, the District Court properly determined Gutride lacked a colorable basis in asserting the Patents-in-Suit, given the strength of Gust's § 101 ineligibility claim. First, the District Court did not abuse its discretion in holding that AlphaCap and Gutride's argument-that it was reasonable to believe that the Patents-in-Suit are not directed to an abstract idea-lacks color. Gust II , 226 F.Supp.3d at 241-43. The Patents-in-Suit generally relate to "data collection templates" in the context of "private equity and debt funding operations." '976 patent, Abstract. Representative claim 1 of the '976 patent recites the method of "managing resource consumer information" for "collect[ing] resource consumer information" by the steps of "a system of one or more machines," "the system providing to at least one user ... a telephone ... within a user inter-face in which the user may input information into the user fields," "defin[ing] a data collection," and "storing the information as a ... profile ... in an electronic database system," and allowing "at least one authorized party ... to access information stored in the system." Id . col. 30 ll. 26-62. We have repeatedly observed that claims similar to those here directed to data organization and use of customizable profiles to facilitate patronage, even when applied in a new business practice like crowdfunding, are abstract ideas. See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n , 776 F.3d 1343, 1345, 1347 (Fed. Cir. 2014) (finding patent directed to "software on an automated teller machine (ATM) that recognizes information written on a scanned check ... [and] stor[es] information ... into memory" to be abstract because "[t]he concept of data collection , recognition, and storage is undisputedly well-known" (emphases added) ); buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding a patent directed to creating a "transaction performance guaranty" for a commercial transaction on computer networks such as the Internet to be abstract and stating that sending information over network is "not even arguably inventive"). The District Court cited and compared the Asserted Claims to many of these same cases related to fundamental economic and conventional business practices, Gust II , 226 F.Supp.3d at 241-42, and there is no example of our court endorsing the patent-eligibility of similar claims to justify the majority's assertion that our " § 101 jurisprudence" during the pendency of this litigation was "evolving," Maj. Op. 1329; see, e.g., Mortg. Grader, Inc. v. First Choice Loan Servs. Inc ., 811 F.3d 1314, 1318, 1324 (Fed. Cir. 2016) (finding patent directed to the idea of "anonymous loan shopping" and claiming "a method for a borrower to evaluate and/or obtain financing" to be abstract). The Asserted Claims merely recite a series of steps for storing and organizing investment data that could all be performed by humans without a computer, and Gutride's attempt to assert otherwise was frivolous given that the abstract idea here is not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and our court involving methods of organizing human activity.
Second, the District Court did not abuse its discretion by rejecting Gutride's claim that the Patents-in-Suit contain an inventive concept sufficient to transform the abstract idea into a patent-eligible application. Gust II , 226 F.Supp.3d at 244. Here, claim 1 utilizes conventional and generic items, including a "processing input"; a device such as a "computer," "telephone,"
*1337 or "personal digital assistant"; and "an electronic database." '976 patent col. 30 ll. 45, 46, 50, 51. When claims like these are "directed to an abstract idea" and "merely requir[e] generic computer implementation," they "do[ ] not move into [§] 101 eligibility territory." buySAFE, 765 F.3d at 1354 (internal quotation marks and citation omitted); see Intellectual Ventures I LLC v. Capital One Bank (USA) , 792 F.3d 1363, 1367 (Fed. Cir. 2015) (finding claims directed to the abstract idea of "tracking financial transactions to determine whether they exceed a pre-set spending limit (i.e., budgeting)" did not "provide a sufficient inventive concept" despite "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer"). According to AlphaCap's proposed claim construction, a "template" is "[a] set of data that serves as a pattern" for data collection, J.A. 2442, which means that in the context of the claims, see, e.g. , '976 patent col. 30 l. 39-40, a "data collection template" is no more than a group of fields that specify the kinds of data that will be collected about different objects, such as investors or investment targets. Yet, data management has been a function of computers for as long as computers have existed and will not transform an abstract concept into a patentable invention. See, e.g., Alice , 134 S.Ct. at 2359. Gutride maintains its position on appeal that claim terms such as "data collection template" and "webpage" constitute a work-around of clearly generic computer implementation, Appellant's Br. 30, which continues to be a beyond meritless and unreasonable view in the face of Alice .
Moreover, I find no error in the District Court's comparison of the Asserted Claims to those of Capital One Bank. The appellant in Capital One Bank admitted that budgeting "undoubtedly ... is an abstract idea," and the court held that claims reciting use of a "communication medium" did not render said claims inventive. 792 F.3d at 1368. The District Court correctly pointed out that Supreme Court precedent in Bilski v. Kappos further supports a finding of ineligibility because "limiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable." Gust II , 226 F.Supp.3d at 244 (quoting 561 U.S. 593, 612, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) ). Therefore, I agree that here, the implementing of economic arrangements using generic computer technology clearly does not constitute an "inventive concept" sufficient to render an otherwise abstract idea patent-eligible. The Patents-in-Suit clearly do not fall in that interstitial area where doubt may reasonably exist. See Gust, Inc. v. AlphaCap Ventures, LLC (Gust III ), No. 1:15-cv-6192 (DLC), 2017 WL 2875642, at *4 n.3 (S.D.N.Y. July 6, 2017). Accordingly, the District Court did not abuse its discretion in finding AlphaCap, through its counsel Gutride, had no reasonable expectation of success on the merits in the patent infringement lawsuit it litigated through 2016 against Gust.
I strongly disagree with the majority's acceptance of Gutride's contention on appeal that "the law on patent eligibility was unsettled" and thus "Gutride ... had good faith arguments that the claims were eligible under [§] 101." Appellant's Br. 22. Nothing about the law of § 101 was sufficiently unsettled at that time so to deem Gutride's arguments "reasonable arguments for interpreting the law." Maj. Op. 1329. We applied the Alice test in a dozen § 101 panel opinions that issued from the time the Supreme Court issued Alice in June 2014 through the course of this litigation until AlphaCap stopped pursuing their claims against Gust in May 2016.[3] Despite *1338 AlphaCap and Gutride's general arguments about unsettled § 101 jurisprudence, "there is no uncertainty or difficulty in applying the principles set out in Alice to reach the conclusion that [the '976 patent's] claims are ineligible." Inventor Holdings, LLC v. Bed Bath & Beyond, Inc. , 876 F.3d 1372, 1379 (Fed. Cir. 2017) ; see id. at 1377-80 (reviewing attorney fees stemming from a district court's 2015 decision granting of an appellee's § 101 motion and agreeing that the case was weak).[4]
The majority instead ignores this precedent, focusing on the "only seven [majority opinions]" filed in the seven months between Alice and the filing of this litigation. Maj. Op. 1329. This improperly narrows the window through which we view counsel's (lack of) a colorable basis to continue litigation for over a year and a half. Indeed, the majority recognizes that, under § 1927, the proper inquiry is whether a party engaged in the "unreasonable and vexatious multiplication of proceedings," Maj. Op. 1328, and in the context of assessing attorney fees, it is therefore necessary to judge whether Gutride as counsel here multiplied proceedings by examining how a party's under-standing of the colorableness of its claim may develop as the law does, see United States v. Int'l Bhd. of Teamsters , 948 F.2d 1338, 1346 (2d Cir. 1991) (stating that § 1927"invites attention to a course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics"); cf. Taurus IP, LLC v. DaimlerChrysler Corp. , 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims[.]"); Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH , 603 F.3d 943, 954 (Fed. Cir. 2010) (providing, in the § 285 context, "[t]he salient inquiry is whether [plaintiff's] claims were so lacking in merit that [the plaintiff] was legally obligated either to abandon its case altogether or to limit itself to challenging the district court's claim construction order on appeal").
Moreover, Gutride's contention on appeal that it "had reasonable grounds to" rely upon our precedent in BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC , 827 F.3d 1341 (Fed. Cir. 2016), and Amdocs (Israel) Ltd. v. Openet Telecom, Inc ., 841 F.3d 1288 (Fed. Cir. 2016), is incredible. Appellant's Br. 34. The majority ignores this point, which, if anything, sheds light on Gutride's eleventh-hour attempts to defend their baseless litigation. While it is true that BASCOM and Amdocs in particular upheld the validity of patents accused of ineligibility due to § 101, we did not decide BASCOM and *1339 Amdocs until after AlphaCap granted the Covenant Not to Sue in May 2016, which is what ended the litigation. Thus, Gutride could not have had "reasonable grounds" to rely upon those cases.
In Inventor Holdings , we acknowledged "that Alice was a significant change in the law as applied to the facts of this particular case." 876 F.3d at 1379. "Prior to Alice , the state of the law for computer-implemented business transaction inventions was less than clear, given this court's divided [2013] en banc opinion." Id . However, as we later explained, post- Alice , "a § 101 defense previously lacking in merit may be meritorious after Alice . This scenario is most likely to occur with respect to patent claims that involve implementations of economic arrangements using generic computer technology," Mortg. Grader , 811 F.3d at 1322, as the claims do here. Comparable to the "anonymous loan shopping" claims at issue in Mortgage Grader , the Asserted Claims are directed to such customizable profiles to facilitate patronage implemented using generic computer technology. And these issues were significant, if not determinative, of the Supreme Court's holding in Alice .
The majority fears a "chill[ing]" effect that imposing "direct economic sanctions" might have on attorneys. Maj. Op. 1329. However, we have expressly stated that "the appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith." Eon-Net LP v. Flagstar Bancorp , 653 F.3d 1314, 1328 (Fed. Cir. 2011) (emphasis added); see id . (finding, in the Federal Rule of Civil Procedure 11 context, that "an attorney, in addition to his obligation to his client, also has an obligation to the court and should not blindly follow the client's interests if not supported by law and facts"). I would, therefore, determine that the District Court did not abuse its discretion in holding that the claims lacked a colorable basis.
II. The District Court Did Not Abuse Its Discretion in Finding Bad Faith
The District Court found AlphaCap and Gutride acted with bad faith throughout litigation, starting when it "opposed Gust's [motion to transfer venue]" and "proceed[ed] with the infringement action." Gust II, 226 F.Supp.3d at 250, 251 ; see Gust III , 2017 WL 2875642, at *6 (awarding fees under § 1927 because "[the] bad-faith filing drove or colored virtually every decision counsel made during the litigation" and led to an unreasonable and vexatious multiplication of the proceedings). The District Court considered multiple instances of bad faith to support its finding. See Gust II , 226 F.Supp.3d at 245-52. As part of its consideration, it first noted the motivation of AlphaCap and Gutride in filing this patent infringement case against Gust along with nine other litigations in the Eastern District with "comparatively paltry settlements with the nine other defendants con-firms its unsavory motivation." Id. at 245 ; see id . ("AlphaCap's decision to file this case in the Eastern District ... -a venue that bears no relationship to the parties or facts at issue in this case, as discussed in more detail below-further supports a finding of inappropriate motivation."). The District Court also analyzed Gutride's litigation of frivolous claims on behalf of its client despite the fact that, "[a]s experienced patent counsel, [they] were well aware of Alice and its implications for the [Patents-in-Suit]," id . at 248 ; see id. (pointing to a statement made by Gutride, when Gust resisted a walkaway settlement offer, that AlphaCap's claims were "not worth litigating" and offered to dismiss the Eastern District litigation with prejudice, yet filed the same day a motion for venue discovery) Gutride's clear litigation strategy was devised to pursue those *1340 claims by "resisting a motion to change venue, twice demand[ing] documents from Gust, and engag[ing] in the prosecution of the [Eastern District litigation]." Id .
Under Second Circuit law, bad faith in the § 1927 context means "motivated by improper purposes such as harassment or delay." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999). I agree with the District Court that Gutride was motivated by such improper purposes, and I find no misstatement of law or erroneous assessment of fact to disturb this finding of bad faith on appeal. The majority attempts to divide and conquer the District Court's analysis at each of the points above, see Maj. Op. 1330-34, but the District Court went to pains to document how "[the] bad-faith filing drove or colored virtually every decision counsel made during the litigation," Gust III , 2017 WL 2875642, at *8. The law is, in fact, clear that we must holistically consider Gutride's entire course of conduct in order to determine if it acted in bad faith by delaying dismissal of its suit, when it had knowledge of the suit's frivolous nature. See Int'l Bhd. of Teamsters , 948 F.2d at 1346. I find no abuse of discretion here where clear evidence supports a finding of bad faith.
The majority incorrectly contends that the District Court relies too heavily on Gutride's statement made during a settlement phone call that this case is "not worth litigating," J.A. 1342, and proffers that it is a common statement in settlement talks, see Maj. Op. 1331 ("In the context of advocating for settlement with the opposing party to settle, this is an inoffensive assertion that the calculus favors settlement[.]"). However, the majority cites no Second Circuit case law to support its theory, and I find none, excusing such a clear statement by counsel as common. The majority's attempt to analogize the facts of this case to our precedent in Q-Pharma, Inc. v. Andrew Jergens Co ., fares no better. 360 F.3d 1295, 1304 (Fed. Cir. 2004). In Q-Pharma, we affirmed a denial of § 285 fees and found no bad faith where "Q-Pharma explains its decision to withdraw its claim of infringement as based on its determination that further pursuit of the lawsuit would not have been worth the investment required to prove infringement." Id . Here, the statement by counsel Seth Safier speaks nothing of lost-investment, so we as the reviewing appellate court cannot import such a limitation. Rather, the statement cuts against Gutride's argument given that, unlike appellant's actions in Q-Pharma , the majority of Gutride's objectionable conduct occurred after Mr. Safier made the above statement in July 2, 2015. Thus, such a statement made so early in litigation indicates that if Mr. Safier believed the "case should settle," then Gutride could have, for example, filed a covenant not to sue much earlier. This demonstrates a bad faith attempt to multiply the proceedings beyond July 2015.
The majority further agrees with Gutride that under "then-current law, the Eastern District was a proper forum." Maj. Op. 1333. The District Court's finding of bad faith made clear that Gust lacked any real ties to the Eastern District, yet Gutride brought suit in that forum, and then claimed there were witnesses from which it required evidence. Gust III , 2017 WL 2875642, at *6. The District Court found that Gutride directly contradicted this position in its subsequent filing, in which it could not identify a single witness "within 100 miles of [the Eastern District's courthouse in] Marshall, Texas." J.A. 3395; see Gust III , 2017 WL 2875642, at *6 ; J.A. 3408-4406. As the District Court pointed out in Gust III , it was only after months of venue discovery and the production of some "37,000 pages of documents" by Gust that Gutride then learned of the existence of users of Gust's online system residing *1341 in the Eastern District, 2017 WL 2875642, at *6 n.10, a situation which simply could not justify Gutride's earlier resistance to the Motion to Transfer Venue from the Eastern District. Gutride's vexatious opposition to the motion constituted an attempt to harass Gust into settling as indicated by the suspect timing of its July 2 discovery motion. See Maj. Op. 1325-26 (timeline of events).
Indeed, Gust early and formally notified AlphaCap through counsel of its belief in the frivolous and exceptional conditions to which it was being subjected, outlining why the case lacked merit, and demanding attorneys' fees if AlphaCap would not settle. J.A. 59; cf. Stone Basket Innovations, LLC v. Cook Med. LLC , 892 F.3d 1175, 1181 (Fed. Cir. 2018) (stating that "provid[ing] early, focused, and supported notice of [a counsel's] belief that it was being subjected to exceptional litigation" aids a court's analysis of a party's unreasonable manner of litigating under a separate attorney fees statutory provision). It was Gutride that instead pursued multiple litigation tactics indicative of unreasonableness. See J.A. 58, 2409 (discovery on the Motion to Transfer Venue), 2452, 2729, 2827, 2882 (claim construction briefings). I find nothing but continued bad faith by Gutride and conclude the District Court properly sanctioned Gutride for the unreasonable and vexatious multiplication of the proceedings.
CONCLUSION
The majority improperly steps out of the appellate role and substitutes its own findings of fact for that of the District Court's. The proper inquiry is whether the District Court based its sanctions on an erroneous assessment of the evidence. It did not make any such errors, and we must defer to the District Court's discretionary award of § 1927 sanctions by affirming its sanctions under such circumstances. Therefore, I respectfully dissent.

Section 1927 provides that "[a]ny attorney" who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The majority states that the Second Circuit's "more exacting" abuse of discretion standard applies, rather than "the ordinary abuse-of-discretion standard," Maj. Op. 1327 (quoting Wolters Kluwer Fin. Servs., Inc. v. Scivantage , 564 F.3d 110, 113-14 (2d Cir. 2009) ); requiring, even under this more exacting standard "sufficiently specific factual findings," Eisemann v. Greene , 204 F.3d 393, 396 (2d Cir. 2000), the District Court based its sanctions determination on sufficiently specific factual findings, for the reasons stated infra .

See In re Brown , 645 F. App'x 1014, 1015 (Fed. Cir. 2016) ; Genetic Techs. Ltd. v. Merial L.L.C ., 818 F.3d 1369, 1374 (Fed. Cir. 2016) ; In re Smith , 815 F.3d 816, 818 (Fed. Cir. 2016) ; Mortg. Grader, Inc. , 811 F.3d at 1322 ; Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC , 635 F. App'x 914, 917 (Fed. Cir. 2015) ; Versata Dev. Grp., Inc. v. SAP Am., Inc. , 793 F.3d 1306, 1331 (Fed. Cir. 2015) ; Capital One Bank , 792 F.3d at 1367 ; Internet Patents Corp. v. Active Network, Inc ., 790 F.3d 1343, 1346 (Fed. Cir. 2015) ; Ariosa Diagnostics, Inc. v. Sequenom, Inc. , 788 F.3d 1371, 1375 (Fed. Cir. 2015) ; OIP Techs., Inc. v. Amazon.com, Inc ., 788 F.3d 1359, 1362 (Fed. Cir. 2015) ; Allvoice Dev. US, LLC v. Microsoft Corp., 612 F. App'x 1009, 1017 (Fed. Cir. 2015) ; Content Extraction , 776 F.3d at 1346-48 ; In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig ., 774 F.3d 755, 763 (Fed. Cir. 2014) ; DDR Holdings, LLC v. Hotels.com, L.P ., 773 F.3d 1245, 1255 (Fed. Cir. 2014) ; Ultramercial, Inc. v. Hulu, LLC , 772 F.3d 709, 713 (Fed. Cir. 2014) ; buySAFE , 765 F.3d at 1351 ; Planet Bingo, LLC v. VKGS LLC , 576 F. App'x 1005, 1006 (Fed. Cir. 2014) ; Digitech Image Techs., LLC v. Elecs. for Imaging, Inc. , 758 F.3d 1344, 1350 (Fed. Cir. 2014).

To be clear, even if one were to concede the existence of some unsettled issues regarding patent eligibility in the immediate post-Alice world, that would not render colorable either claims or arguments regarding eligibility.